[Civ. No. 33771. First Dist., Div. Four. Oct. 16, 1974.]

DONALD P. STEINMEYER et al., Plaintiffs and Respondents, v.
WARNER CONSOLIDATED CORPORATION et al.,
Defendants and Appellants.

■

## COUNSEL

Collette & Ziegler, John M. Collette and John V. Erickson for Defendants and Appellants.

Miller, Starr & Regalia, Edmund L. Regalia and Leslie A. Johnson for Plaintiffs and Respondents.

## OPINION

**CHRISTIAN, J.**—Defendants Warner Consolidated Corporation and Warner National Corporation (hereinafter "Warner") appeal from a preliminary injunction restraining presentation of documents necessary to obtain payment under a bank letter of credit. The instrument had been procured by respondent Donald P. Steinmeyer (hereinafter "Steinmeyer") to assure payment of sums owing upon the purchase by him, from Warner, of the entire capital stock of Tahoe Sierra Development Corporation.

Steinmeyer executed and delivered to Warner several promissory notes, one of which entitled Steinmeyer to offset "The amount of any loss, liability or damage suffered by or in connection with the provisions of this agreement." Steinmeyer also caused to be delivered to Warner letters of credit issued by the Bank of America to guarantee payment of the promissory notes. The letter of credit here in question called for payment by the bank upon presentation of the letter of credit, the promissory note and a statement by at least one of Warner's officers that Steinmeyer had defaulted in paying the note.

Before the letter of credit had been presented for payment. Steinmeyer notified Warner and the bank that he was exercising the offset rights provided in the note, claiming that Warner had failed to disclose several substantial liabilities of Tahoe Sierra which affected the value of the stock. Steinmeyer declared in the notice that after setting off the undisclosed liabilities he would pay Warner only $45,041 of the $252,000 which had been promised in the note.

■

Steinmeyer then sued Warner and the bank, praying for relief including injunctions against Warner from demanding payment on the letter of credit and against the bank from making payment thereon. The only preliminary relief granted by the trial court was an injunction against Warner, prohibiting presentation to the bank of one of the documents needed to authorize payment of the letter of credit.

The parties have argued at length the question whether it would be contrary to the provisions of Commercial Code section 5114 for the court to enjoin the bank from honoring the letter of credit. We do not reach that issue in the present appeal. The trial court did not enjoin payment by the bank; the preliminary injunction only enjoined Warner from presenting to the bank a statement that Steinmeyer had not performed in accordance with the terms of the promissory note. The issue on appeal is whether injunctive relief is available to Steinmeyer.

 Warner contends the letter of credit should be given effect without regard to Steinmeyer's claimed right of setoff. The letter of credit calls for payment upon presentation with a statement from Warner that Steinmeyer had defaulted on the promissory note. But as between Steinmeyer and Warner the letter of credit cannot be construed in isolation from the underlying agreement and the promissory note. The letter of credit was contemporaneous with the agreement and the note; it was one part of a complex arrangement for the sale of the Tahoe Sierra stock. The several instruments must therefore be construed together. (Civ. Code, § 1642; *Mayers* v. *Loew's, Inc.* (1950) 35 Cal.2d 822, 827 [221 P.2d 26]; *Goodman* v. *Severin* (1969) 274 Cal.App.2d 885, 895 [79 Cal.Rptr. 555]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 525, pp. 447-448; 12 Cal.Jur.2d, Contracts, § 123, pp. 333-335.)

The agreement contained an undertaking by Warner to indemnify Steinmeyer against any undisclosed liabilities of Tahoe Sierra and authorized Steinmeyer to set off against the note "The amount of any loss, liability or damage suffered by or in connection with the provisions of this agreement . . . ."

A right of offset is also provided in the promissory note. An "offset" may be defined as a claim that serves to counterbalance or to compensate for another claim. (See Webster's [unabr.] New Internat. Dict. (3d ed. 1967) p. 1567; *Lalime* v. *Desbiens* (1947) 115 Vt. 165, 168 [55 A.2d 121, 123]; *Leonard* v. *Charter Oak Life Ins. Co.* (1895) 65 Conn. 529, 537 [33 A. 511, 513].) The promissory note permits Steinmeyer to offset "The amount of any loss, liability or damage suffered by or in connection with the provsions of [the] agreement . . . ." The claims

asserted by Steinmeyer consist of several liabilities, affecting the value of the stock, which were allegedly not disclosed on Tahoe Sierra's financial statement. If proved, these claims may indeed fall within one of the grounds for indemnification specified in the stock purchase agreement. They may thus give rise to a right of offset against sums due under the promissory note.

The letter of credit called for payment upon presentation of, among other things, "A statement executed by a duly qualified officer or officers of Warner Consolidated Corporation, its successors or assigns, that Donald P. Steinmeyer did not perform in accordance with the terms and conditions of the above-mentioned promissory note and that the amount of the draft is therefore due and owing." Warner would construe the quoted passage as vesting in it the sole, unrestricted power to determine whether Steinmeyer had complied with the terms of the note. This construction, however, would be incongruous with other aspects of the transaction. Both the stock purchase agreement and the promissory note expressly reserve to Steinmeyer the right to offset specified claims against sums due under the note. It would be anomalous to empower Warner to circumvent Steinmeyer's rights of offset simply by seeking payment of the letter of credit. ■ "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." (*Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 564 [212 P.2d 878]; see also *Crail* v. *Blakely* (1973) 8 Cal.3d 744, 749-750 [106 Cal.Rptr. 187, 505 P.2d 1027].) "This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." (*Harm* v. *Frasher* (1960) 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367]; accord *Bewick* v. *Mecham* (1945) 26 Cal.2d 92, 99 [156 P.2d 757, 157 A.L.R. 1277].) We conclude that Warner has no right to deny Steinmeyer the benefits of his offset rights.

■ Warner contends that the granting of an injunction against presentation of the letter of credit was nevertheless improper. An injunction cannot be granted to prevent breach of a contract which is not specifically enforceable. (Code Civ. Proc., § 526, 2d subd. 5.) It has been held repeatedly, however, that an agreement to transfer stock of peculiar value may be specifically enforceable. (*Gilfallan* v. *Gilfallan* (1914) 168 Cal. 23, 26 [141 P. 623]; *Kaneko* v. *Okuda* (1961) 195 Cal.App.2d 217, 234 [15 Cal.Rptr. 792]; *Glascock* v. *Sukumlyn* (1955) 131 Cal.App.2d 587, 593 [281 P.2d 90]; *Korabek* v. *Weaver Aircraft Corp.* (1944) 65 Cal.App.2d

32, 39 [149 P.2d 876].) The Tahoe Sierra stock was apparently wholly owned by Warner and not readily obtainable on the open market. The trial court could reasonably have concluded that the stock had a peculiar value as to render the agreement specifically enforceable. Therefore, Code of Civil Procedure section 526 does not preclude the injunction.

 Steinmeyer had alleged that Warner and affiliated parties were foreign corporations with few assets in this state and that as a consequence any judgment against them might be satisfied only through litigation elsewhere. Warner contends that these allegations, even if true, do not establish grounds for injunctive relief. But the trial court has broad power to grant a preliminary injunction where it appears that a party is threatening to commit an act which would render the court's ultimate judgment ineffectual or require a multiplicity of suits. (Code Civ. Proc., § 526.)

It was within the trial court's discretionary power to determine whether Steinmeyer should be given injunctive relief. (See *Weingand* v. *Atlantic Sav. & Loan Assn.* (1970) 1 Cal.3d 806, 819-820 [83 Cal.Rptr. 650, 464 P.2d 106]; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527-528 [67 Cal.Rptr. 761, 439 P.2d 889].) No abuse of discretion appears.

Finally, Warner contends that a preliminary injunction should not have been granted because the allegations of the complaint were not verified nor supported by affidavit. This contention is contrary to the facts; although the verification of the complaint was omitted from the clerk's transcript, reference to the trial court's file has established that the complaint was verified by an officer of one of the plaintiff corporations.

Affirmed.

Rattigan, Acting P. J., and Emerson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.