Albert F. Stevens and Doris D. Stevens v. Essex Junction Zoning Board of Adjustment and Milo Reynolds

Albert Cutler, et al. v. Essex Junction Zoning Board of Adjustment, Albert F. Stevens and Doris D. Stevens

[428 A.2d 1100]

No. 73-79

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed February 3, 1981

298

*Vincent A. Paradis,* Essex Junction, for Plaintiffs.

*Edward J. Cashman,* Essex Junction, for Defendants.

Larrow, J. Albert and Doris Stevens, appellees here, own two contiguous parcels of land in the village of Essex Junction, acquired at different times. Although irregular in shape,

they form a rough L. One lot fronts, on the north, on East Street; the other, southerly of it, fronts on the east on Lamoille Street. Both lots are in an AR-3 Zone under the local zoning regulations, connoting an urban district with high density use. The East Street property now has two apartment houses on it, one with five units and the other with two. The Lamoille Street property has a single family structure. These cases, tried together below, involve efforts by the Stevens' to construct additional units, claimed by them to be a permitted conditional use under the ordinance. These efforts were opposed at the local and superior court level by the appellants, neighboring property owners.

The first application filed was for a four unit apartment using portions of both properties. This was rejected by the Zoning Board of Ajustment on March 16, 1976, and no appeal was taken. Nine days later another application was filed, very similar in nature except that the proposed building was moved some fifty-two feet. This application was denied June 15, 1976, and the Stevens' appealed to Chittenden Superior Court. While this appeal was pending, on January 31, 1977, application was made to the Board to remove the house on the Lamoille Street lot and replace it with a six unit apartment house. The trial court found, with evidentiary support, that this project did not involve the East Street lot. The Board approved the application February 22, 1977. Appellants here appealed the ruling to Chittenden Superior Court. Eventually the cases were heard together. The trial court upheld the granting of the Lamoille Street application, and dismissed the East Street appeal with prejudice, the Stevens' having represented Lamoille Street to be their preference and that success in that case would warrant dismissal of their East Street appeal.

Appellants raise six general claims of error, three procedural and three on the merits. They assert (1) that the second appeal should have been abated, on their motion, because of the pendency of the first; (2) that the Board of Adjustment lacked jurisdiction to hear the Lamoille Street application while the first appeal was pending; (3) that the East Street case should have been dismissed on the ground that it was filed within six months of denial of the first application, contrary to § 805 of the Village zoning regulations;

(4) that the proposals constitute a planned unit development under the regulation without satisfying the requirements therefor; (5) that standards for variance rather than for conditional use should be applied; and (6) that the proposed development does not meet the standards for conditional use. We treat these objections in that order.

■ The defense of abatement was not raised in the trial court until almost ten months after the Lamoille Street appeal. Appellees assert that this was untimely. We are not prepared to say that this is so, absent any showing of prejudice and in light of V.R.C.P. 74(c), eliminating the need for pleadings in this type of appeal. Apart from its timeliness, however, the objection was not well taken. We have previously set out the requirements for abatement:

> [T]he pendency of a former action in a court of competent jurisdiction within the same state or jurisdiction, between the same parties, and involving the same subject matter and cause of action, wherein all the rights of the parties thereto may be fully and finally determined and adjudicated, may be asserted as a ground for the abatement of the second action. The identity in these particulars should be such that if the pending suit had already been disposed of, it could be pleaded in bar as a former adjudication of the same matter between the same parties, and unless each of these elements is present, the pendency of one action will not operate to abate a subsequent one. (Citation omitted.)

*Lalime* v. *Desbiens*, 115 Vt. 165, 169, 55 A.2d 121, 123–24 (1947).

■ An abatement defense also requires that the relief sought be the same. *Id.* The burden of proving each element rests on the party urging abatement as a defense. See *Frigon* v. *Whipple*, 134 Vt. 376, 360 A.2d 69 (1976); V.R.C.P. 8(c); 1 Am. Jur. 2d *Abatement, Survival, and Revival* § 39. These elements do not appear in the instant case. Different proposed locations are involved, a different number of apartment units, and differing street access. The East Street project involved both parcels of land, Lamoille Street only one. In each case the alignment of the parties is different, being reversed. Such re-

versal generally precludes assertion of the defense of abatement. See *Lorenz* v. *Dreske*, 62 Wis. 2d 273, 214 N.W.2d 753 (1974). Capability of an eventual plea of former adjudication is not here met, either, as the evidence in one case is quite different from that in the other. *Hill* v. *Grandey*, 132 Vt. 460, 463, 321 A.2d 28, 31 (1974).

Appellants' second contention is really only a minor variation of the first, above discussed. They claim the pendency of the East Street appeal to superior court divested the zoning board of jurisdiction to act on the Lamoille Street application, citing *Kotz* v. *Kotz*, 134 Vt. 36, 349 A.2d 882 (1975), for this proposition. *Kotz* does not go so far. It merely holds that a proper appeal serves to divest a lower court of power to act in the same case while the appeal is pending. The procedure there condemned amounted to a horizontal appeal. The factual differences in these two cases, already outlined, weigh against any such conclusion here.

The third assignment of error also lacks merit. In effect it is that the East Street appeal, by the Stevens', should have been dismissed on grounds other than those assigned by the trial court. The disposition made was the same one appellants sought, *i.e.*, dismissal. Their disagreement with the court's reasoning cannot be ground for reversal. *Lane Construction Corp.* v. *State*, 127 Vt. 287, 248 A.2d 508 (1968).

The fourth claim of error, like the others hereinafter discussed, relates to matters of substance. It is that the proposal approved by the trial court is part of a planned unit development under the statutes and local zoning regulations, and fails to satisfy the requirements for such development. We disagree. The Lamoille Street proposal involves only the construction of one building, on one lot. Although the building is to be multi-family, it is not in any sense a planned unit development. That the two are not the same is evident from § 1007 of the zoning regulations, which enumerates them separately as conditionally permitted uses. Section 1301.4 defines a multiple family dwelling unit as "[A] building . . . used . . . as a residence for (3) three or more families living as units independently of one another." Planned unit residential development is not defined, but § 1007 accords to uses enumerated "the

common meaning of the term." A planned unit development is usually thought of as involving development of a large tract of land, frequently large enough to constitute a new community. 2 R. Anderson, *American Law of Zoning* §§ 11.12, 11.13 (2d ed. 1976). It is commonly restricted to developments exceeding a specified number of units or acres. See, e.g., *Millbrae Association for Residential Survival* v. *City of Millbrae*, 262 Cal. App. 2d 222, 243, 69 Cal. Rptr. 251 (1968); *Mann* v. *City of Fort Thomas*, 437 S.W.2d 209, 210 (Ky. 1969); *Symposium, Planned Unit Development*, 114 U. Pa. L. Rev. 1, 151 (1965); Goldston & Scheuer, *Zoning of Planned Residential Developments*, 73 Harv. L. Rev. 241, 259 (1959). Indeed, five acres is the minimum planned unit development under the local regulations, § 1104.1. This clearly reflects that a minimum number of acres must be involved before the regulation relating to planned unit development becomes applicable. Multi-family type dwellings are not required to involve five acres. No such acreage is here involved. What is here under consideration is clearly not a planned unit development, but a multi-family dwelling. That the applicants also own an adjacent, clearly distinct lot does not alter this result.

■ Appellants' next argument is that the trial court applied the wrong standards to the proposal, that what is sought is a variance rather than a conditional use. But the regulations do not prohibit the use here contemplated; on the contrary, they permit it "under exception and upon review." Essex Junction Zoning Regulations § 1007. This is not the variance for unique circumstances, hardship and the like authorized by 24 V.S.A. § 4468(a). It is, rather, the conditional use provided for by 24 V.S.A. § 4407(2), which also specifies the requisite conditions for approval.

■ The last basis for appeal, if we correctly analyze appellants' argument, is that the criteria for a conditional use have not been met. They attack the findings of the trial court as to adequacy of sewer facilities, character of the neighborhood, effect on traffic, and compliance with front and rear yard requirements. The argument as to yard requirements is based upon the premise, rejected earlier in this opinion, that

the proposed development encompasses both lots owned by the Stevens', with resulting frontage on two streets. It does not, even though it is proposed to run a sewer service across the East Street lot. And analysis of the court's findings in other particulars indicates that, although some of them might well be regarded as controversial, they are not clearly erroneous. As such, they will not be overturned. *Economou* v. *Economou*, 136 Vt. 611, 399 A.2d 496 (1979).

We note, however, that some of the conditions found and approved by the trial court were, apparently through inadvertence, omitted from the judgment order itself. We will supply that omission by our entry order here. *In re Jones*, 138 Vt. 223, 230, 415 A.2d 202, 206 (1980).

*Paragraph 1 of the order of the trial court is amended to read:*

> *1. That Albert and Doris Stevens are authorized to construct a six unit apartment house on their parcel of land at 11 Lamoille Street in the Village of Essex Junction, Vt., in replacement of the single family house presently thereon, providing a minimum of twelve (12) on-premise parking spaces therefor, and locating said apartment house 20 feet from each lot sideline, 40 feet from the front lot line, and 140 feet from the rear lot line.*

*As so amended, the order of the trial court is affirmed.*